MANATT, PHELPS & PHILLIPS, LLP
MARGARET LEVY (Bar No. 66585)
JOSEPH E. LASKA (Bar No. 221055)
11355 West Olympic Boulevard
Los Angeles, California 90064
Telephone: (310) 312-4000
Facsimile: (310) 312-4224
Email: mlevy@manatt.com and jlaska@manatt.com

*Attorneys for Defendant*
STONEBRIDGE LIFE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRI SMITH and MICHELLE SMITH FREGOSO,<br><br>Plaintiffs,<br><br>vs.<br><br>STONEBRIDGE LIFE INSURANCE COMPANY,<br><br>Defendants. | Case No. C 08-01466 JCS<br><br>Magistrate Judge Joseph C. Spero<br><br>NOTICE OF MOTION AND MOTION OF DEFENDANT STONEBRIDGE LIFE INSURANCE COMPANY FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT<br><br>[Filed concurrently with:<br>(1) Joint Statement of Undisputed Facts;<br>(2) Stipulation Authenticating Exhibits;<br>(3) Declaration of Cheryl Penner;<br>(4) Declaration of Joseph E. Laska; and<br>(5) Proposed Order.]<br><br>Hearing Date: September 26, 2008<br>Hearing Time: 9:30 a.m.<br>Courtroom: A<br><br>Action Filed: September 5, 2007 |

41290950.2

TO THE COURT, TO THE PARTIES AND TO THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 26, 2008 at 9:30 a.m. in Courtroom A of this Court, Defendant Stonebridge Life Insurance Company ("Stonebridge") will and hereby does move for partial summary judgment on the First Cause of Action for Breach of Contract alleged by Plaintiffs Terri Smith and Michele Smith Fregoso ("Plaintiffs") on the ground that there is no genuine issue of material fact that Stonebridge did not breach the applicable insurance policy as alleged by Plaintiffs.

This Motion is made pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1. It is based on this Notice of Motion and Motion; the attached memorandum of points and authorities; the Joint Statement of Undisputed Facts, Stipulation Authenticating Exhibits, and declarations of Cheryl Penner and Joseph E. Laska filed concurrently; the papers on file with the Court in this matter; and any additional evidence or authorities that may be presented at oral argument.

Dated: August 13, 2008          MANATT, PHELPS & PHILLIPS, LLP
                                MARGARET LEVY
                                JOSEPH E. LASKA


                                By:   /s/ Joseph E. Laska
                                      Joseph E. Laska
                                      *Attorneys for Defendant*
                                      STONEBRIDGE LIFE INSURANCE
                                      COMPANY

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41290950.2                              1
NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..........................................................................................1
II. STATEMENT OF FACTS ............................................................................2
    A. The Policy ...........................................................................................2
    B. Ms. Hall-Hussain's long history with Oxycodone ..............................3
    C. Ms. Hall-Hussain's death ....................................................................3
    D. It is undisputed that Ms. Hall-Hussain took far more Oxycodone than Dr. Chen prescribed ....................................................................5
    E. Stonebridge denied Plaintiffs' claim because it is not covered ...........6
    F. Plaintiffs' lawsuit against Stonebridge .................................................7
III. ARGUMENT .................................................................................................7
    A. Stonebridge is entitled to summary judgment on Plaintiffs' claim for breach of contract because Ms. Hall-Hussain's death was the result of medical treatment and is excluded under the Policy ..................................................................................................8
    B. Stonebridge is entitled to summary judgment on Plaintiffs' claim for breach of contract because Ms. Hall-Hussain's death was caused by taking more Oxycodone than prescribed by her physician and is excluded under the Policy .........................................9
        1. The Policy's "drug" exclusion is valid and enforceable ..........10
            a. Section 10369 applies only to group disability policies and not to individual accidental death policies like the one in this case ...................................11
            b. The policy form in this case was approved by the California Insurance Commissioner ............................12
            c. The Policy language is not "less favorable" to Plaintiffs than the optional statutory language on these facts .......................................................................13
        2. Ms. Hall-Hussain's death is excluded because her Oxycodone overdose was not "on the advice of a physician." ...................................................................................14
IV. CONCLUSION ............................................................................................15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Barkerding v. Aetna Life Ins. Co.*,
 82 F.2d 358 (5th Cir. 1936) .................................................................................. 8

*Bayless v. Travelers Ins. Co.*,
 2 Fed. Cas. 1077 (E.D.N.Y. 1877), *rev'd on other grounds*, 113
 U.S. 316 (1885) ...................................................................................................... 9

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986) .............................................................................................. 7

*Dice v. General Electric Capital Assurance Co.*,
 93 Fed. Appx. 68 (6th Cir. 2004) .................................................................. 13, 14

*Heighley v. JCPenney Life Ins. Co.*,
 257 F. Supp. 2d 1241 (C.D. Cal. 2003) ................................................................. 7

*Hummel v. Continental Casualty Insurance Company*,
 254 F. Supp. 2d 1183 (D. Nev. 2003) ................................................................. 14

*Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) .............................................................................................. 7

*New Amsterdam Cas. Co. v. Perryman*,
 162 Miss. 864 (1932) ............................................................................................ 9

*Order of the United Commercial Travelers of America v. Shane*,
 64 F.2d 55 (8th Cir. 1933) .................................................................................... 9

*Wilson v. Business Men's Assurance Co.*,
 181 F.2d 88 (9th Cir. 1950) .................................................................................. 8

## STATUTES

Cal. Ins. Code § 10270 ............................................................................................. 11

Cal. Ins. Code § 10323 ....................................................................................... 10, 12

Cal. Ins. Code § 10369 *et seq.* ......................................................................... 10, 11

Cal. Ins. Code § 10369.1 ............................................................................... 10, 11, 12

Cal. Ins. Code § 10369.1 *et seq.* ........................................................................ 11, 12

Cal. Ins. Code § 10369.2 .......................................................................................... 10

Cal. Ins. Code § 10369.12 .................................................................................. 10, 12

41290950.2

ii

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
(continued)

**Page**

Cal. Ins. Code § 106 ................................................................................................. 10

Fed. R. Civ. P. 56(c) ................................................................................................... 7

## OTHER AUTHORITIES

Croskey, et al., *California Practice Guide: Insurance Litigation*,
§ 6:479 (Rutter 2008) ............................................................................................. 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case involves an individual accidental death insurance policy issued by Stonebridge Life Insurance Company ("Stonebridge") to Diane Geraldine Hall-Hussain, who lived in Eureka, California. On April 9, 2007, Ms. Hall-Hussain was found dead in her apartment. The Humboldt County Coroner's Office investigated Ms. Hall-Hussain's death and concluded that she died as a result of an overdose of Oxycodone, a narcotic pain medication prescribed by her physician, Dr. Chia Chen, to treat her chronic pain. It is undisputed that Ms. Hall-Hussain had taken at least 178 Oxycodone pills in less than two weeks, far more than the dosage prescribed by Dr. Chen.

Ms. Hall-Hussain's daughters and beneficiaries, Plaintiffs Terri Smith and Michele Smith Fregoso ("Plaintiffs"), filed a claim with Stonebridge for accidental death benefits. After conducting a thorough investigation, Stonebridge denied the claim because Ms. Hall-Hussain's death was excluded from coverage under the policy, which excludes coverage for "Injury that: . . . (3) is caused by or results from . . . taking or using any narcotic, barbiturate or any other drug unless taken or used as prescribed by a Physician," or "(7) is due to disease, bodily or mental infirmity, or medical or surgical treatment of these."

Plaintiffs have filed this lawsuit against Stonebridge alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The parties have agreed to file cross-motions for partial summary judgment on Plaintiffs' First Cause of Action for Breach of Contract.

Stonebridge is entitled to partial summary judgment on Plaintiffs' claim for breach of contract because there is no genuine issue of material fact that Ms. Hall-Hussain's death resulted from "disease, bodily or mental infirmity, or medical or surgical treatment of these," and is therefore subject to that policy exclusion. It is undisputed that Ms. Hall-Hussain's death was caused by an overdose of

1  Oxycodone, which was prescribed by her physician to treat her chronic pain.

2  Stonebridge is also entitled to partial summary judgment on the separate ground that there is no genuine issue of material fact that Ms. Hall-Hussain's death resulted from taking or using a drug in a manner not prescribed by her physician, and is therefore subject to that policy exclusion. It is undisputed that Ms. Hall-Hussain voluntarily took almost twice as much Oxycodone as her doctor had prescribed.

For these reasons, discussed in detail below, Stonebridge respectfully requests that the Court grant partial summary judgment in its favor.

## II. STATEMENT OF FACTS

### A. The Policy

Stonebridge issued Accidental Death and Dismemberment Policy No. 72A45PO585 to Ms. Hall-Hussain effective November 7, 2005 (the "Policy").[1] (Undisputed Fact ("UF") 1.) The Policy provides accidental death benefits in the amount of $50,000 in the event of an accidental death covered under the terms of the Policy. (UF 4.)

The Policy contains the following provisions:

> No benefit shall be paid for injury that:
>
> * * *
>
> 3.  is caused by or results from the Covered Person's taking or using any narcotic, barbiturate or any other drug unless taken or used as prescribed by a Physician;
>
> * * *
>
> 7.  is due to disease, bodily or mental infirmity, or medical or surgical treatment of these.

(Stipulation Authenticating Exhibits ("SAE"), Exhibit A at p. 5.)

The Policy issued to Ms. Hall-Hussain is based on policy form number

---

[1] The Policy was issued by J.C. Penney Life Insurance Company, which is now known as Stonebridge. (Declaration of Cheryl Penner ("Penner Decl.") at ¶ 3.)

41290950.2

2

D454R.  (Penner Decl. at ¶ 5 and Exhibit 1; *see also* SAE, Exhibit A.)  The California Insurance Commissioner approved the language of policy form D454R on May 30, 2001.  (Penner Decl. at ¶¶ 3-4 and Exhibit 2.)

### B. Ms. Hall-Hussain's long history with Oxycodone

Between July 7, 2004 and the date of Ms. Hall-Hussain's death, her primary physician was Dr. Chia Chen.  (Declaration of Joseph E. Laska ("Laska Decl."), Exhibit 1 at 18:25-19:4.)  Dr. Chen testified that Ms. Hall-Hussain had taken various narcotic painkillers since at least 1999.  (*Id*. at 34:15-23.)  Dr. Chen specifically prescribed OxyContin[2] for Ms. Hall-Hussain on a monthly basis from April 21, 2005 through the date of her death.  (*Id*. at 24:9-25, 42:11-43:1.)  OxyContin is a narcotic painkiller used to treat pain.  (UF 12.)  Dr. Chen prescribed OxyContin for Ms. Hall-Hussain to treat her "intractable pain."  (UF 15.)

Taking narcotic painkillers such as OxyContin involves certain risks, including the risk of overdose.  (Laska Decl., Exhibit 1 at 31:25-32:14.)  On numerous occasions, Dr. Chen discussed with Ms. Hall-Hussain the risks associated with taking OxyContin, including the risk of overdose.  (*Id*. at 32:25-34:6.)  Ms. Hall-Hussain indicated to Dr. Chen that she understood these risks.  (*Id*. at 35:4-9, 35:24-36:3.)

Dr. Chen also instructed Ms. Hall-Hussain not to increase the dosage of OxyContin without her consent.  (*Id*. at 36:4-7.)  Ms. Hall-Hussain indicated to Dr. Chen that she understood that she was not supposed to take more OxyContin than the prescribed amount.  (*Id*. at 37:2-7.)

### C. Ms. Hall-Hussain's death

Ms. Hall-Hussain was found dead in her residence on April 9, 2007.  (UF 5.)  Her death was investigated by Humboldt County Deputy Coroner Roy Horton, who prepared a Death Investigation Report detailing his findings.  (UF 6-7.)  As the

---

[2] OxyContin is a brand-name drug; Oxycodone is the generic equivalent.  (UF 12.)  The two terms are used interchangeably throughout this Motion.

41290950.2
3

Deputy Coroner detailed in the Death Investigation Report:

> I located several medications in the room. The decedent was being seen by Dr. Chen. One bottle had contained 180 Oxycontin that was 40 mg each. The prescription had been received on March 27, 2007. The bottle only had one tablet remaining [on April 9]. I also found one Oxycontin tab on the bed that had been spilled out of the opened bottle. The Oxycontin bottle was the only medication bottle that was lying on the bed.

(SAE, Exhibit B at p. 9.)

The label on the bottle found on Ms. Hall-Hussain's bed indicated that it had contained 180 40mg OxyContin pills prescribed by Dr. Chia Chen, and the prescription had been filled on March 27, 2008 by Lima Pharmacy in Eureka, California. (Laska Decl., Exhibit 2 at 28:5-29:21.) The label on the bottle states: "Take one to two tablets by mouth every eight hours." (*Id.*) Deputy Coroner Horton found no other OxyContin pills in Ms. Hall-Hussain's apartment. (SAE, Exhibit B at p. 9; Laska Decl., Exhibit 2 at 29:25-31:6.)

Deputy Coroner Horton drew postmortem blood from Ms. Hall-Hussain and sent it to Central Valley Toxicology for a drug and alcohol screen. (SAE, Exhibit B at p. 9; Laska Decl., Exhibit 2 at 37:5-9.) The Toxicology Report prepared by Central Valley Toxicology was made a part of the Death Investigation Report. (SAE, Exhibit B at p. 9; Laska Decl., Exhibit 2 at 37:10-14.) According to the Toxicology Report, the effective range for Oxycodone is 0.005 to 0.05 mg/L, while the potentially toxic range for Oxycodone begins at 0.2 mg/L. (SAE, Exhibit B at p. 11.) The Oxycodone level in Ms. Hall-Hussain's blood was 0.25 mg/L—in the potentially toxic range. (*Id.*)

As part of his investigation, Deputy Coroner Horton spoke with Dr. Chen. (SAE, Exhibit B at p. 9; Laska Decl., Exhibit 2 at 40:25-41:18.) Dr. Chen informed Deputy Coroner Horton that she had prescribed Oxycodone for Ms. Hall-Hussain. (SAE, Exhibit B at p. 9; Laska Decl., Exhibit 2 at 41:19-25.)

In the Death Investigation Report, Deputy Coroner Horton concluded that the cause of Ms. Hall-Hussain's death was Oxycodone intoxication. (SAE, Exhibit B at p. 10; Laska Decl., Exhibit 2 at 43:18-23.)

Deputy Coroner Horton completed Ms. Hall-Hussain's Death Certificate. (SAE, Exhibit B at p. 14; Laska Decl., Exhibit 2 at 47:23-48:7.) The final Death Certificate, issued on April 26, 2007, listed the immediate cause of Ms. Hall-Hussain's death as "Oxycodone Intoxication." (UF 8.) The Death Certificate also states that the manner of death was "accidental" and that "Decedent took an accidental overdose of Oxycodone." (UF 9-10.)

### D. It is undisputed that Ms. Hall-Hussain took far more Oxycodone than Dr. Chen prescribed

The OxyContin bottle found on Ms. Hall-Hussain's bed had contained 180 40mg OxyContin pills and had been filled on March 27, 2007. (Laska Decl., Exhibit 2 at 28:5-29:21.) The bottle reflected the following dosage: "Take one to two tablets by mouth every eight hours." (*Id.*) Dr. Chen saw Ms. Hall-Hussain on April 3, 2007, and at that time increased the dosage of OxyContin from two 40mg pills three times per day to three 40mg pills three times per day. (Laska Decl., Exhibit 1 at 48:7-49:12.) Based on his investigation, the Deputy Coroner believes that Ms. Hall-Hussain died on the evening of April 8, 2007. (Laska Decl., Exhibit 2 at 60:5-24.)

These facts show that Ms. Hall-Hussain took far more Oxycodone than Dr. Chen had prescribed, even accounting for the increased dosage on April 3, as follows:

- When Ms. Hall-Hussain filled her last Oxycodone prescription on March 27, 2007, the dosage was "one to two tablets . . . every eight hours." Assuming that Ms. Hall-Hussain filled the prescription first thing on the morning of March 27, 2007, and assuming that she took the maximum dosage of six tablets in every 24-hour period during the seven days between March 27, 2007 and April 2,

2007 (the day before her appointment with Dr. Chen), she should have taken a maximum of 42 pills during that period.

- On April 3, 2007, Dr. Chen instructed Ms. Hall-Hussain to increase the dosage of Oxycodone to three pills every eight hours. Assuming that Ms. Hall-Hussain took the maximum of nine pills in every 24-hour period during the six days between April 3, 2008 and her death on April 8, 2007, she should have taken a maximum of 54 pills during that period.

- Thus, had Ms. Hall-Hussain taken the maximum dosage of Oxycodone prescribed by Dr. Chen between March 27, 2007 and her death on April 8, 2007, she would have consumed no more than 96 pills. Yet she took 178 of the 180 pills in the bottle—nearly *double* the prescribed amount.

### E. <u>Stonebridge denied Plaintiffs' claim because it is not covered</u>

Plaintiffs submitted a claim for benefits to Stonebridge on April 27, 2007. (UF 17.) Plaintiffs are the beneficiaries of the Policy in equal shares. (UF 18.)

Stonebridge conducted an investigation, which included contacting the Humboldt County Coroner, Dr. Chen and Lima Pharmacy, and requesting and receiving from each the records pertaining to Ms. Hall-Hussain. Stonebridge also telephoned the Deputy Coroner and received additional information regarding the circumstances of Ms. Hall-Hussain's death.

Based on its investigation, Stonebridge concluded that Ms. Hall-Hussain's death was excluded from coverage under two separate exclusions in the Policy: "No benefit shall be paid for Injury that: . . . (3) is caused by or results from . . . taking or using any narcotic, barbiturate or any other drug unless taken or used as prescribed by a Physician," or "(7) is due to disease, bodily or mental infirmity, or medical or surgical treatment of these." On June 12, 2007, Stonebridge sent a letter to Plaintiffs denying their claim based on Stonebridge's claims investigation and the two Policy exclusions. (UF 19.)

| | |
|---|---|
| 1 | Plaintiffs sent a letter to Stonebridge dated July 20, 2007 asking it to |
| 2 | reconsider its denial of their claim. (SAE, Exhibit F.) No additional documents or |
| 3 | information were submitted by Plaintiffs. (*Id.*) Stonebridge reconsidered its denial |
| 4 | and, by letter dated August 9, 2007, Stonebridge maintained its denial of Plaintiffs' |
| 5 | claim. (SAE, Exhibit G.) |

### F. Plaintiffs' lawsuit against Stonebridge

On September 5, 2007, Plaintiffs filed their lawsuit against Stonebridge alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs allege, among other things, that Stonebridge "claimed that decedent had taken more Oxycodone than was prescribed by her physician. However, the facts disclose that decedent had taken her medication exactly as prescribed by her physician." (Complaint at ¶ 13.) Plaintiffs also allege that Stonebridge wrongly relied on the exclusion for "medical or surgical treatment" because "the use of pain medication was not a treatment of a medical condition but rather an attempt to mask the pain associated therewith." (Complaint at ¶ 17.)

## III. ARGUMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The U.S. Supreme Court has clarified that there is no "genuine issue for trial" "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). On summary judgment, "when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party." *Heighley v. JCPenney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1249 (C.D. Cal. 2003), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### A. Stonebridge is entitled to summary judgment on Plaintiffs' claim for breach of contract because Ms. Hall-Hussain's death was the result of medical treatment and is excluded under the Policy.

Stonebridge is entitled to partial summary judgment on Plaintiffs' breach of contract claim because Ms. Hall-Hussain's death is excluded under the Policy's "medical and surgical treatment" exclusion. It is undisputed that the Policy excludes death "due to disease, bodily or mental infirmity, or *medical or surgical treatment* of these." (SAE, Exhibit A at p. 5 (emphasis added).) It is also undisputed that Ms. Hall-Hussain died from an overdose of Oxycodone, which Dr. Chen prescribed to treat Ms. Hall-Hussain's intractable pain:

> Q. [W]hat was the reason that you prescribed the oxycodone for Ms. Hall-Hussain?
>
> A. For intractable pain.
>
> Q. And you prescribed the OxyContin *to treat the intractable pain*?
>
> A. *Right*.

(Laska Decl., Exhibit 1 at 24:6-11 (emphasis added).)

It does not appear that California State courts have specifically examined whether a death caused by an overdose of prescription medication falls within the "medical or surgical treatment" exclusion. But the Ninth Circuit has examined a similar issue and found the death to be excluded under such an exclusion. *Wilson v. Business Men's Assurance Co.*, 181 F.2d 88, 90 (9th Cir. 1950) (applying Idaho law and holding death by adverse reaction to hospital-administered sedatives to be excluded under accidental death policy's medical treatment exclusion).

Moreover, courts in other jurisdictions have uniformly found deaths by overdoses of prescription mediation to be excluded under medical treatment exclusions. *Barkerding v. Aetna Life Ins. Co.*, 82 F.2d 358, 359 (5th Cir. 1936) (analogizing injury by excessive heat treatment to overdose: "The excess of heat is like an overdose of a prescribed drug ignorantly taken by a patient, the effect of which is held to be the result of medical treatment under policies such as this

one."), *citing New Amsterdam Cas. Co. v. Perryman*, 162 Miss. 864 (1932) (paralysis as a result of overdose of quinine taken in twice the dosage recommended by physician was excluded by accident insurance policy's medical treatment exclusion); *Bayless v. Travelers Ins. Co.*, 2 Fed. Cas. 1077 (E.D.N.Y. 1877), *rev'd on other grounds*, 113 U.S. 316 (1885) (insured's death from inadvertent overdose of opium prescribed by physician in proper doses fell within accident insurance policy's medical treatment exclusion). *See also Order of the United Commercial Travelers of America v. Shane*, 64 F.2d 55, 59-60 (8th Cir. 1933) ("If the administering of the drug in the case at bar did not constitute medical or surgical treatment, we should be at a loss how to classify such act.").

Ms. Hall-Hussain's death by Oxycodone intoxication is excluded under the Policy's "medical or surgical treatment" exclusion. As a result, Stonebridge is entitled to summary judgment on Plaintiffs' breach of contract claim.

### B. Stonebridge is entitled to summary judgment on Plaintiffs' claim for breach of contract because Ms. Hall-Hussain's death was caused by taking more Oxycodone than prescribed by her physician and is excluded under the Policy.

Stonebridge is also entitled to summary judgment on Plaintiffs' breach of contract claim on the separate and independent ground that Ms. Hall-Hussain's death is excluded under the Policy's "drug" exclusion. It is undisputed that the Policy excludes death that "is caused by or results from the Covered Person's taking or using any narcotic, barbiturate or any other drug *unless taken or used as prescribed by a Physician*." (SAE, Exhibit A at p. 5 (emphasis added).) It is also undisputed that Ms. Hall-Hussain died from an overdose of Oxycodone after taking at least 178 pills in 12 days, while the maximum prescribed dosage during that period was only 96 pills.

When Ms. Hall-Hussain took twice as many Oxycodone pills as prescribed by Dr. Chen, she did not take the drug "as prescribed by a Physician." Her death is therefore excluded from coverage under the Policy.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiffs do not dispute these facts. Nor do Plaintiffs appear to dispute that their claim for benefits is precluded under the Policy's exclusionary language. Instead, Plaintiffs argue in their Complaint that the exclusionary language should be read out of the Policy and replaced with statutory language that, according to them, is broader and does not preclude their claim. As set forth below, Plaintiffs' argument fails on every level.

### 1. The Policy's "drug" exclusion is valid and enforceable.

In their Complaint (at ¶¶ 14-17), Plaintiffs allege that the Policy's "drug" exclusion should be replaced by the following language from the California Insurance Code:

> Intoxicants and controlled substances: The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any controlled substance *unless administered on the advice of a physician.*

Cal. Ins. Code § 10369.12 (emphasis added). This language is found in Section 10369 *et seq.*,[3] which provides a list of "optional" policy provisions that insurers may include in group disability policies. Section 10369.1 provides:

> Except as provided in Section 10323, no disability policy delivered or issued for delivery to any person in this State shall contain provisions respecting the matters set forth in Sections 10369.2 to 10369.12, inclusive, unless such provisions are in the words in which the same appear in such sections; *provided, however*, that the insurer may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the commissioner, which is not less favorable in any respect to the insured or the beneficiary.

Cal. Ins. Code § 10369.1 (emphasis added).[4]

According to Plaintiffs, the Policy language "unless taken or used as prescribed by a Physician" is less favorable to them than the statutory language "unless administered on the advice of a physician," so the Policy language must be

---
[3] All references are to the California Insurance Code unless otherwise specified.
[4] Accidental death insurance is classified as disability insurance in California. Cal. Ins. Code § 106.

41290950.2

10

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

replaced by the statutory language. And, according to Plaintiffs, the allegedly broader statutory language does not exclude Ms. Hall-Hussain's death from coverage. (Complaint at ¶ 16.)

Plaintiffs' allegations fail because the Insurance Code provisions they rely on apply only to group disability policies, not to individual accidental death policies like this Policy. Even if those provisions were applicable to this Policy, the language in the Policy is valid and enforceable because it has been approved by the California Insurance Commissioner. And even if the provisions cited by Plaintiffs did apply and the Policy was rewritten as Plaintiffs suggest, Ms. Hall-Hussain's death would still be excluded from coverage.

      a.    <u>Section 10369 applies only to group disability policies and not to individual accidental death policies like the one in this case.</u>

Section 10369.1 *et seq.* is found in Article 5 of Chapter 4 of the Insurance Code. Section 10270 (titled "Scope of Chapter") specifies the types of insurance subject to the provisions of Chapter 4. It includes "selected group disability insurance" as well as certain enumerated categories of insurance covering more than one person (such as, for example, "blanket insurance" and "tuition refund insurance").

But *individual* disability policies—including individual accidental death policies like the one in this case—are *not* subject to the provisions of Chapter 4. Cal. Ins. Code § 10270; *accord*, Croskey, et al., *California Practice Guide: Insurance Litigation*, § 6:479 (Rutter 2008) ("*Compare—group policies*: Special doctrines apply to accidental death benefits payable under group insurance policies"; and then citing to Section 10270 and Section 10369.1 as examples).

The Policy issued to Ms. Hall-Hussain was an individual accidental death policy. (SAE, Exhibit A; Penner Decl. at ¶ 5.) It is not a group disability policy. Therefore, it is not subject to the provisions of Chapter 4 of the Insurance Code, including Section 10369.12.

### b. The policy form in this case was approved by the California Insurance Commissioner.

Even if Chapter 4 were construed to apply to individual accidental death policies, the language of Section 10369.12 still would not be read into the Policy because the Policy's language—including the "drug" exclusion—was approved by the California Insurance Commissioner. The Policy issued to Ms. Hall-Hussain is based on form "D454R," which was specifically approved by the Commissioner on May 30, 2001. (Penner Decl. at ¶¶ 3-5 and Exhibit 2; *see also* SAE, Exhibit A.)

Section 10369.1 provides that "the insurer may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the commissioner, which is not less favorable in any respect to the insured or the beneficiary." The Policy's "drug" exclusion applies because it was approved by the Commissioner and (as discussed below in Section (c)) is not less favorable than the language in Section 10369.12.

Plaintiffs contend that the language in Section 10369.12 is more favorable than the Policy's "drug" exclusion. But the Policy language will nevertheless stand under a separate provision of the Insurance Code. Section 10369.1 expressly applies only "[e]xcept as provided in Section 10323 . . . ." Cal. Ins. Code § 10369.1. Section 10323, in turn, provides that "with the approval of the insurance commissioner," any statutory language in Article 4 (including Section 10369.1, *et seq*.) may be modified if it is "inconsistent with the coverage provided by a particular form or policy." Cal. Ins. Code § 10323. To the extent that the "on the advice of a physician" language in Section 10369.12 may be construed in the manner Plaintiffs suggest—that is, to cover a death caused by an overdose of prescription narcotics taken other than as prescribed by a physician—it is inconsistent with the accidental death coverage provided under the Policy.

### c. The Policy language is not "less favorable" to Plaintiffs than the optional statutory language on these facts.

Plaintiffs' Complaint largely rests on their allegations that the Policy language "unless taken or used as prescribed by a Physician" is less favorable than the statutory language "unless administered on the advice of a physician," and that Ms. Hall-Hussain's death should be covered under the latter provision. No California court appears to have addressed this issue. But the Sixth Circuit recently did, and it interpreted the "on the advice of a physician" language to *exclude* deaths caused by an overdose of prescription medication. *Dice v. General Electric Capital Assurance Co.*, 93 Fed. Appx. 68 (6th Cir. 2004) (not officially published).

In *Dice*, the insured's doctor prescribed a maximum of six 40mg Oxycodone tablets, or a total of 240 milligrams, every 24 hours. The insured's postmortem toxicology report showed that the insured had the equivalent of 300mg of Oxycodone in her blood, more than the prescribed dosage. Her life insurance policy excluded death caused by taking drugs "unless administered on the advice of a physician." *Id.* at 69. The Sixth Circuit affirmed the District Court's entry of summary judgment for the insurer and ruled that the insured's death was caused by ingesting more Oxycodone than her physician had prescribed and was excluded under the policy:

> Brenda ingested more Oxycontin than her physician had prescribed or advised that she ingest and such ingestion, either alone or in combination with some of the other drugs found in her blood, caused her death. Under these circumstances, Oxycontin was not administered on the advice of Brenda's physician. Because Brenda's death resulted from her being under the influence of at least one drug that was not administered on the advice of a physician, the policy exclusion is applicable . . . .

*Id.* at 70 (emphasis added).[5]

---

[5] During this litigation, Plaintiffs have pointed to only one case to the contrary: *Hummel v. Continental Casualty Insurance Company*, 254 F. Supp. 2d 1183, 1189 (D. Nev. 2003) (holding that similar policy exclusion for drugs taken "on the advice of a physician" did not exclude death caused by overdose of prescription Oxycodone). *Hummel* is a Nevada District Court case and is not binding on this Court.

### 2. Ms. Hall-Hussain's death is excluded because her Oxycodone overdose was not "on the advice of a physician."

Even if this Court were to find that the Policy language "unless taken or used as prescribed by a Physician" should be replaced by the statutory language "unless administered on the advice of a physician," Plaintiffs' claim still fails because Ms. Hall-Hussain did not take her Oxycodone "on the advice of" her physician. It is undisputed that:

- When Ms. Hall-Hussain filled her last Oxycodone prescription on March 27, 2007, the dosage prescribed by Dr. Chen was "one to two tablets . . . every eight hours." On April 3, 2007, Dr. Chen instructed Ms. Hall-Hussain to increase the dosage of Oxycodone to three pills every eight hours.
- On numerous occasions, Dr. Chen discussed with Ms. Hall-Hussain the risks associated with taking Oxycodone, including the risk of overdose, and Ms. Hall-Hussain indicated to Dr. Chen that she understood these risks.
- Dr. Chen also instructed Ms. Hall-Hussain not to increase the dosage of Oxycodone without her consent, and Ms. Hall-Hussain indicated to Dr. Chen that she understood that she was not supposed to take more Oxycodone than prescribed.
- Despite these warnings, Ms. Hall-Hussain ignored Dr. Chen's prescribed dosage and took at least 178 Oxycodone pills in thirteen days. That is nearly double the maximum total dosage of 96 pills prescribed for that period.
- Ms. Hall-Hussain's postmortem Toxicology Report determined the level of Oxycodone in her blood to be 0.25 mg/L, above the effective range and well into the toxic range.

Ms. Hall-Hussain did not take Oxycodone "on the advice of" her physician. To hold otherwise in this case would render the statutory exclusion meaningless. It would also violate public policy and encourage abuse of prescription medication. Because Ms. Hall-Hussain's death is excluded under the "drug" exclusion

(regardless of which language is used), Stonebridge is entitled to summary judgment on Plaintiffs' breach of contract claim.

## IV. CONCLUSION

For the reasons discussed above, Stonebridge respectfully requests that this Court grant partial summary judgment in its favor on Plaintiffs' First Cause of Action for Breach of Contract.

Dated: August 13, 2008

MANATT, PHELPS & PHILLIPS, LLP
MARGARET LEVY
JOSEPH E. LASKA

By: /s/ Joseph E. Laska
Joseph E. Laska
*Attorneys for Defendant*
STONEBRIDGE LIFE INSURANCE COMPANY