1  MANATT, PHELPS & PHILLIPS, LLP
   MARGARET LEVY (Bar No. 66585)
2  JOSEPH E. LASKA (Bar No. 221055)
   11355 West Olympic Boulevard
3  Los Angeles, California 90064
   Telephone: (310) 312-4000
4  Facsimile: (310) 312-4224
   Email: mlevy@manatt.com and jlaska@manatt.com
5
   *Attorneys for Defendant*
6  STONEBRIDGE LIFE INSURANCE COMPANY

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 TERRI SMITH and MICHELE          Case No. C 08-01466 JCS
   SMITH FREGOSO,
12                                  Magistrate Judge Joseph C. Spero
            Plaintiffs,
13                                  OPPOSITION OF DEFENDANT
       vs.                          STONEBRIDGE LIFE INSURANCE
14                                  COMPANY TO PLAINTIFFS'
   STONEBRIDGE LIFE                 MOTION FOR PARTIAL SUMMARY
15 INSURANCE COMPANY,               JUDGMENT ON PLAINTIFFS' FIRST
                                    CAUSE OF ACTION FOR BREACH
16          Defendant.              OF CONTRACT

17                                  [Filed concurrently with:
                                    (1) Declaration of Cheryl Penner;
18                                  (2) Declaration of Joseph E. Laska;
                                    (3) Evidentiary Objections to
19                                  Declaration of Michele Smith Fregoso;
                                    and
20                                  (4) Evidentiary Objections to
                                    Declaration of John Stennett.]
21
                                    Hearing Date:   September 26, 2008
22                                  Hearing Time:   9:30 a.m.
                                    Courtroom:      A
23
                                    Action Filed:   September 5, 2007
24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 2

    A.    The Policy ...................................................................................... 2

    B.    Ms. Hall-Hussain's long history with Oxycodone ...................... 3

    C.    Ms. Hall-Hussain's death ............................................................. 4

    D.    It is undisputed that Ms. Hall-Hussain took far more Oxycodone than Dr. Chen prescribed ............................................. 5

    E.    Stonebridge denied Plaintiffs' claim because it is excluded from coverage ....................................................................................... 6

    F.    Plaintiffs' lawsuit against Stonebridge ....................................... 7

III.  ARGUMENT ........................................................................................... 8

    A.    Plaintiffs are not entitled to partial summary judgment because they have failed to carry their burden of proving that Ms. Hall-Hussain's death was "accidental." ...................................... 8

    B.    Plaintiffs are not entitled to partial summary judgment because Ms. Hall-Hussain's death was the result of medical treatment and is excluded under the Policy ..................................................... 10

    C.    Plaintiffs are not entitled to partial summary judgment because Ms. Hall-Hussain's death was caused by taking more Oxycodone than prescribed by her physician and is excluded under the Policy ................................................................................ 12

        1.    The Policy's "drug" exclusion is valid and enforceable ......... 13

            a.    Section 10369 applies only to group disability policies and not to individual accidental death policies like the one in this case ...................................... 14

            b.    The policy form in this case was approved by the California Insurance Commissioner ............................... 14

            c.    The Policy language is not "less favorable" to Plaintiffs than the optional statutory language on these facts ........................................................................ 15

            d.    *Hummel* does not help Plaintiffs ................................. 16

                (1)    *Hummel* is not binding .................................... 17

                (2)    *Hummel* is distinguishable .............................. 17

                (3)    *Hummel* is poorly reasoned ............................ 18

            e.    *Legare* does not help Plaintiffs either ....................... 20

        2.    Ms. Hall-Hussain's death is excluded because her Oxycodone overdose was not "on the advice of a physician." ................................................................................. 21

    D.    Plaintiffs' Motion was untimely .................................................. 21

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3

i

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## TABLE OF CONTENTS
(continued)

2

**Page**

3      IV.    CONCLUSION ............................................................................................22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3

ii

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4

*Barkerding v. Aetna Life Ins. Co.*,
5    82 F.2d 358 (5th Cir. 1936) ............................................................................. 11

6  *Bayless v. Travelers Ins. Co.*,
    2 Fed. Cas. 1077 (E.D.N.Y. 1877), *rev'd on other grounds*,
7    113 U.S. 316 (1885) ......................................................................................... 11

8  *Bornstein v. J.C. Penney Life Ins. Co.*,
    946 F. Supp. 874 (C.D. Cal. 1996) ................................................................. 12
9

*Chale v. Allstate Life Ins. Co.*,
10   353 F.3d 742 (9th Cir. 2003) ........................................................................... 12

11 *Dice v. General Electric Capital Assurance Co.*,
    93 Fed. Appx. 68 (6th Cir. 2004) ............................................................. 16, 18
12

*Heighley v. J.C. Penney Life Ins. Co.*,
13   257 F. Supp. 2d 1241 (C.D. Cal. 2003) ........................................................ 9, 11

14 *Hummel v. Continental Casualty Insurance Company*,
    254 F. Supp. 2d 1183 (D. Nev. 2003) ..................................................... passim
15

*Khatchatrian v. Continental Cas. Co.*,
16   332 F.3d 1227 (9th Cir. 2003) ......................................................................... 12

17 *Legare v. Canada Life Assurance Co.*
    U.S. District Court for the Southern District of California
18   Case No. 02cv0798 DMS (NLS) (Feb. 18, 2004) ...................................... 20, 21

19 *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................................... 8
20

*Morris v. Noguchi*,
21   141 Cal. App. 3d 520 (1983) .............................................................................. 9

22 *New Amsterdam Cas. Co. v. Perryman*,
    162 Miss. 864 (1932) ........................................................................................ 11
23

*Order of the United Commercial Travelers of America v. Shane*,
24   64 F.2d 55 (8th Cir. 1933) ............................................................................... 11

25 *Wilson v. Business Men's Assurance Co.*,
    181 F.2d 88 (9th Cir. 1950) ............................................................................. 10

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                        iii

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES
(continued)

**Page**

## STATUTES

Cal. Ins. Code § 106 ............................................................................................. 13

Cal. Ins. Code § 10270 ......................................................................................... 14

Cal. Ins. Code § 10323 .................................................................................... 13, 15

Cal. Ins. Code § 10369 *et seq.* ...................................................................... 13, 14

Cal. Ins. Code § 10369.1 ....................................................................... 13, 14, 15, 17

Cal. Ins. Code § 10369.1 *et seq.* .................................................................... 14, 15

Cal. Ins. Code § 10369.2 ....................................................................................... 13

Cal. Ins. Code § 10369.12 ............................................................................... passim

Fed. R. Civ. P. 56(c) .............................................................................................. 8

Nev. Rev. Stat. § 689A.180 .................................................................................. 18

## OTHER AUTHORITIES

Croskey, et al., *California Practice Guide: Insurance Litigation,*
    § 6:479 (Rutter 2008) ..................................................................................... 14

## RULES

Federal Rule of Evidence 201 ............................................................................... 20

Federal Rules of Evidence 801-02 ......................................................................... 20

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41310307.3                                    iv

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

Defendant Stonebridge Life Insurance Company ("Stonebridge") issued an individual accidental death insurance policy to Diane Geraldine Hall-Hussain, who lived in Eureka, California.  On April 9, 2007, Ms. Hall-Hussain was found dead in her apartment.  The Humboldt County Coroner's Office investigated Ms. Hall-Hussain's death and concluded that she died as a result of an overdose of Oxycodone, a narcotic pain medication prescribed by her physician, Dr. Chia Chen, to treat her chronic pain.  It is undisputed that Ms. Hall-Hussain had taken at least 178 Oxycodone pills in less than two weeks, far more than the dosage prescribed by Dr. Chen.

Ms. Hall-Hussain's daughters and beneficiaries, Plaintiffs Terri Smith and Michele Smith Fregoso ("Plaintiffs"), filed a claim with Stonebridge for accidental death benefits.  After conducting a thorough investigation, Stonebridge denied the claim because Ms. Hall-Hussain's death was excluded from coverage under the policy, which excludes coverage for "Injury that: . . . (3) is caused by or results from . . . taking or using any narcotic, barbiturate or any other drug unless taken or used as prescribed by a Physician," or "(7) is due to disease, bodily or mental infirmity, or medical or surgical treatment of these."

Plaintiffs filed this lawsuit against Stonebridge alleging breach of contract and breach of the implied covenant of good faith and fair dealing.  Now Plaintiffs ask this Court to grant partial summary judgment in their favor on their First Cause of Action for Breach of Contract.  Plaintiffs' Motion fails on multiple levels.

First, Plaintiffs are not entitled to partial summary judgment on their claim for breach of contract because they have failed to carry their burden of proving that Ms. Hall-Hussain's death was "accidental" and therefore covered under the policy. It is undisputed that Ms. Hall-Hussain was an experienced user of narcotic pain medication, that on several occasions Dr. Chen discussed with Ms. Hall-Hussain

1   the risks of taking Oxycodone and the necessity of not exceeding the prescribed

2   dosage, and that Ms. Hall-Hussain indicated to Dr. Chen that she understood these

3   instructions.  Yet it is also undisputed that, despite knowledge of these risks, Ms.

4   Hall-Hussain voluntarily ingested at least 178 Oxycodone pills in 13 days—nearly

5   double the dosage prescribed by Dr. Chen.  Moreover, Ms. Hall-Hussain had a

6   history of depression.  On April 3, 2007, just six days before her body was found,

7   Ms. Hall-Hussain told Dr. Chen that she was feeling depressed.  These facts are

8   more than sufficient to create a genuine issue of material fact regarding whether

9   Ms. Hall-Hussain's death was "accidental."

10  Second, even if Ms. Hall-Hussain's death were found to be accidental, it is

11  excluded under the policy's "medical or surgical treatment" exclusion.  It is

12  undisputed that Ms. Hall-Hussain died from an overdose of Oxycodone, which had

13  been prescribed by Dr. Chen as treatment for her chronic pain.

14  Third, Ms. Hall-Hussain's death is also excluded under the separate policy

15  exclusion for drugs taken other than "as prescribed by a Physician."  It is

16  undisputed that in the days before Ms. Hall-Hussain's death, she greatly exceeded

17  the dosage of Oxycodone prescribed by Dr. Chen.

18  For these reasons, discussed in detail below, Stonebridge respectfully

19  requests that the Court deny Plaintiffs' Motion. [1]

20  ## II.    STATEMENT OF FACTS

21     ### A.    The Policy

22  Stonebridge issued Accidental Death and Dismemberment Policy

23  No. 72A45PO585 to Ms. Hall-Hussain effective November 7, 2005 (the "Policy"). [2]

24  (Undisputed Fact ("UF") 1.)  The Policy provides accidental death benefits in the

25  amount of $50,000 in the event of an accidental death covered under the terms of

26  ----

[1] Because Ms. Hall-Hussain's death is excluded under these policy exclusions as a
matter of law, Stonebridge has filed its own Motion for Partial Summary Judgment
27  on Plaintiffs' First Cause of Action for Breach of Contract on these grounds.

28  [2] The Policy was issued by J.C. Penney Life Insurance Company, which is now
known as Stonebridge.  (Declaration of Cheryl Penner ("Penner Decl.") at ¶ 3.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                          2

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    the Policy.  (UF 4.)

2           The Policy contains the following provisions:

3                  No benefit shall be paid for injury that:

4                  * * *

5                  3.    is caused by or results from the Covered Person's
                   taking or using any narcotic, barbiturate or any other drug
6                  unless taken or used as prescribed by a Physician;

7                  * * *

8                  7.    is due to disease, bodily or mental infirmity, or
                   medical or surgical treatment of these.
9

10   (Stipulation Authenticating Exhibits ("SAE"), Exhibit A at p. 5.)[3]

11          The Policy issued to Ms. Hall-Hussain is policy form number D454R.

12   (Penner Decl. at ¶ 5 and Exhibit 1; *see also* SAE, Exhibit A.)  The California

13   Insurance Commissioner approved the language of policy form D454R on May 30,

14   2001.  (Penner Decl. at ¶¶ 3-4 and Exhibit 2.)

15          **B.    Ms. Hall-Hussain's long history with Oxycodone**

16          Between July 7, 2004 and the date of Ms. Hall-Hussain's death, her primary

17   physician was Dr. Chia Chen.  (Declaration of Joseph E. Laska ("Laska Decl."),

18   Exhibit 1 at 18:25-19:4.)  Dr. Chen testified that Ms. Hall-Hussain had taken

19   various narcotic painkillers since at least 1999.  (*Id*. at 34:15-23.)  Dr. Chen

20   prescribed OxyContin[4] for Ms. Hall-Hussain on a monthly basis from April 21,

21   2005 through the date of her death to treat her "intractable pain."  (*Id*. at 24:9-25,

22   42:11-43:1; UF 15)  OxyContin is a narcotic painkiller used to treat pain.  (UF 12.)

23          Taking narcotic painkillers such as OxyContin involves certain risks,

24   including the risk of overdose.  (Laska Decl., Exhibit 1 at 31:25-32:14.)  On

25   numerous occasions, Dr. Chen discussed with Ms. Hall-Hussain the risks associated

26   _____

27   [3] The Stipulation Authenticating Exhibits, along with the Joint Statement of
     Undisputed Facts, was filed concurrently with the parties' cross-motions.

28   [4] OxyContin is a brand-name drug; Oxycodone is the generic equivalent.  (UF 12.)
     The two terms are used interchangeably throughout this Motion.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                              3

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    with taking OxyContin, including the risk of overdose.  (*Id*. at 32:25-34:6.)

2    Ms. Hall-Hussain indicated to Dr. Chen that she understood these risks.  (*Id*. at

3    35:4-9, 35:24-36:3.)

4        Dr. Chen also instructed Ms. Hall-Hussain not to increase the dosage of

5    OxyContin without her consent.  (*Id*. at 36:4-7.)  Ms. Hall-Hussain indicated to

6    Dr. Chen that she understood that she was not supposed to take more OxyContin

7    than the prescribed amount.  (*Id*. at 37:2-7.)

8        In addition, Ms. Hall-Hussain had a history of depression.  (Laska Decl.,

9    Exhibit 1 at 58:1-19.)  On April 3, 2007, six days before Ms. Hall-Hussain's body

10   was discovered, she told Dr. Chen that "[s]he feels depressed because of pain and

11   doesn't want to bother [with her blood glucose]."  (SAE, Exhibit D at p. 16; Laska

12   Decl., Exhibit 1 at 57:4-25.)

13   **C.    Ms. Hall-Hussain's death**

14       Ms. Hall-Hussain was found dead in her residence on April 9, 2007.  (UF 5.)

15   Her death was investigated by Humboldt County Deputy Coroner Roy Horton, who

16   prepared a Death Investigation Report detailing his findings.  (UF 6-7.)  Based on

17   his investigation, the Deputy Coroner believes that Ms. Hall-Hussain died on the

18   evening of April 8, 2007.  (Laska Decl., Exhibit 2 at 60:5-24.)  As the Deputy

19   Coroner detailed in the Death Investigation Report:

20           I went inside the apartment where I located the decedent
             in the one and only bedroom.  The decedent was dressed
21           in a nightgown, sitting in the prayer position along side
             the bed.  * * *  I located several medications in the room.
22           The decedent was being seen by Dr. Chen.  One bottle
             had contained 180 Oxycontin that was 40 mg each.  The
23           prescription had been received on March 27, 2007.  The
             bottle only had one tablet remaining [on April 9].  I also
24           found one Oxycontin tab on the bed that had been spilled
             out of the opened bottle.  The Oxycontin bottle was the
25           only medication bottle that was lying on the bed.

26   (SAE, Exhibit B at p. 9.)

27       The label on the bottle, which had contained 180 40mg OxyContin pills on

28   March 27, 2007, states:  "Take one to two tablets by mouth every eight hours."

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                    4

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1  (Laska Decl., Exhibit 2 at 28:5-29:21.)  Only two pills remained, and Deputy

2  Coroner Horton found no other OxyContin pills in Ms. Hall-Hussain's apartment.

3  (SAE, Exhibit B at p. 9; Laska Decl., Exhibit 2 at 29:25-31:6.)

4      Deputy Coroner Horton drew postmortem blood from Ms. Hall-Hussain and

5  sent it to Central Valley Toxicology for a drug and alcohol screen.  (SAE, Exhibit B

6  at p. 9; Laska Decl., Exhibit 2 at 37:5-9.)  The Toxicology Report prepared by

7  Central Valley Toxicology was made a part of the Death Investigation Report.

8  (SAE, Exhibit B at p. 9; Laska Decl., Exhibit 2 at 37:10-14.)  According to the

9  Toxicology Report, the effective range for Oxycodone is 0.005 to 0.05 mg/L, while

10  the potentially toxic range for Oxycodone begins at 0.2 mg/L.  (SAE, Exhibit B at

11  p. 11.)  The Oxycodone level in Ms. Hall-Hussain's blood was 0.25 mg/L—in the

12  potentially toxic range.  (*Id*.)  In the Death Investigation Report, Deputy Coroner

13  Horton concluded that the cause of Ms. Hall-Hussain's death was Oxycodone

14  intoxication.  (SAE, Exhibit B at p. 10; Laska Decl., Exhibit 2 at 43:18-23.)

15      Deputy Coroner Horton completed Ms. Hall-Hussain's Death Certificate.

16  (SAE, Exhibit B at p. 14; Laska Decl., Exhibit 2 at 47:23-48:7.)  The final Death

17  Certificate, issued on April 26, 2007, listed the immediate cause of Ms.

18  Hall-Hussain's death as "Oxycodone Intoxication."  (UF 8.)  The Death Certificate

19  also states that the manner of death was "accidental" and that "Decedent took an

20  accidental overdose of Oxycodone."  (UF 9-10.)

21  **D.    It is undisputed that Ms. Hall-Hussain took far more Oxycodone than Dr. Chen prescribed**

22

23      The OxyContin bottle found on Ms. Hall-Hussain's bed had contained 180

24  40mg OxyContin pills and had been filled on March 27, 2007.  (Laska Decl.,

25  Exhibit 2 at 28:5-29:21.)  The bottle reflected the following dosage:  "Take one to

26  two tablets by mouth every eight hours."  (*Id*.)  Dr. Chen saw Ms. Hall-Hussain on

27  April 3, 2007, and at that time increased the dosage of OxyContin from two 40mg

28  pills three times per day to three 40mg pills three times per day.  (Laska Decl.,

1   Exhibit 1 at 48:7-49:12.)  Based on his investigation, the Deputy Coroner believes
2   that Ms. Hall-Hussain died on the evening of April 8, 2007.  (Laska Decl., Exhibit 2
3   at 60:5-24.)

4       Even accounting for the increased dosage on April 3, 2007, Ms. Hall-Hussain
5   took far more Oxycodone than Dr. Chen had prescribed:

6   •   When Ms. Hall-Hussain filled her last Oxycodone prescription on March 27,
7       2007, the dosage was "one to two tablets . . . every eight hours."  If she filled the
8       prescription first thing in the morning on March 27, 2007 and took the
9       maximum dosage of six tablets in every 24-hour period during the seven days
10      between March 27, 2007 and April 2, 2007 (the day before her appointment with
11      Dr. Chen), she should have taken a maximum of 42 pills during that period.

12  •   On April 3, 2007, Dr. Chen instructed Ms. Hall-Hussain to increase the dosage
13      of Oxycodone to three pills every eight hours.  If Ms. Hall-Hussain took the
14      maximum of nine pills in every 24-hour period during the six days between
15      April 3, 2007 and her death on April 8, 2007, she should have taken a maximum
16      of 54 pills during that period.

17  •   Thus, if Ms. Hall-Hussain had taken the maximum dosage of Oxycodone
18      prescribed by Dr. Chen between March 27, 2007 and her death on April 8, 2007,
19      she should have taken no more than 96 pills.  Instead, she took at least 178 of
20      the 180 pills in the bottle—nearly *double* the prescribed amount.

21      **E.     Stonebridge denied Plaintiffs' claim because it is excluded from**
22              **coverage.**

23      Plaintiffs submitted a claim for accidental death benefits on April 27, 2007.
24  (UF 17.)  Plaintiffs are the beneficiaries of the Policy in equal shares.  (UF 18.)

25      Stonebridge conducted an investigation, which included contacting the
26  Humboldt County Coroner, Dr. Chen and Lima Pharmacy, and requesting and
27  receiving from each the records pertaining to Ms. Hall-Hussain.  Stonebridge also
28  telephoned the Deputy Coroner and received additional information regarding the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                          6

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    circumstances of Ms. Hall-Hussain's death.

2          Based on its investigation, Stonebridge concluded that Ms. Hall-Hussain's

3    death was excluded from coverage under two separate exclusions in the Policy:

4    "No benefit shall be paid for Injury that: . . . (3) is caused by or results from . . .

5    taking or using any narcotic, barbiturate or any other drug unless taken or used as

6    prescribed by a Physician," and "(7) is due to disease, bodily or mental infirmity, or

7    medical or surgical treatment of these."  On June 12, 2007, Stonebridge sent a letter

8    to Plaintiffs denying their claim based on Stonebridge's claims investigation and

9    the two Policy exclusions.  (UF 19.)

10          Plaintiffs sent a letter to Stonebridge dated July 20, 2007 asking it to

11   reconsider its denial of their claim.  (SAE, Exhibit F.)  No additional documents or

12   information was submitted by Plaintiffs.  (*Id*.)  Stonebridge reconsidered its denial

13   and, by letter dated August 9, 2007, Stonebridge affirmed its denial of Plaintiffs'

14   claim.  (SAE, Exhibit G.)

15          **F.    Plaintiffs' lawsuit against Stonebridge**

16          On September 5, 2007, Plaintiffs filed their lawsuit against Stonebridge

17   alleging breach of contract and breach of the implied covenant of good faith and

18   fair dealing.  Plaintiffs allege, among other things, that Stonebridge "claimed that

19   decedent had taken more Oxycodone than was prescribed by her physician.

20   However, the facts disclose that decedent had taken her medication exactly as

21   prescribed by her physician."  (Complaint at ¶ 13.)  Plaintiffs also allege that

22   Stonebridge wrongly relied on the exclusion for "medical or surgical treatment"

23   because "the use of pain medication was not a treatment of a medical condition but

24   rather an attempt to mask the pain associated therewith."  (Complaint at ¶ 17.)

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                    7

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## III.   ARGUMENT

2

### A.   Plaintiffs are not entitled to partial summary judgment because they have failed to carry their burden of proving that Ms. Hall-Hussain's death was "accidental."

3

4      In their Motion, Plaintiffs acknowledge that it is their burden to prove that

5  Ms. Hall-Hussain's death was a covered "accident" under the Policy.  (Motion at

6  6:28-7:2.)  Thus, to be entitled to summary judgment on their breach of contract

7  claim, Plaintiffs must show that there is no genuine issue of material fact that

8  Ms. Hall-Hussain's death was accidental.

9      Plaintiffs have failed to satisfy their burden.  It is undisputed that Ms.

10  Hall-Hussain was an experienced user of narcotic pain medication.  It is also

11  undisputed that on numerous occasions Dr. Chen discussed the risks of taking

12  Oxycodone with Ms. Hall-Hussain and instructed her not to take more than the

13  prescribed dosage, and that Ms. Hall-Hussain indicated to Dr. Chen that she

14  understood those risks and instructions.  It is further undisputed that, despite

15  knowledge of those risks, Ms. Hall-Hussain intentionally took at least 178

16  Oxycodone pills in 13 days, effectively doubling the prescribed dosage during that

17  period.

18      In addition, Dr. Chen confirmed that Ms. Hall-Hussain had a history of

19  depression.  (Laska Decl., Exhibit 1 at 58:1-19.)  In fact, Ms. Hall-Hussain's

20  medical records indicate that on April 3, 2007—five days before her death—she

21  told Dr. Chen that "[s]he feels depressed because of pain and doesn't want to bother

22  [with her blood glucose]."  (SAE, Exhibit D at p. 16; Laska Decl., Exhibit 1 at

23  57:4-25.)

24      Based on these uncontroverted facts, a rational trier of fact could determine

25  that Ms. Hall-Hussain was either suicidal or indifferent to whether she lived or died.

26  Even if the trier of fact were to determine that Ms. Hall-Hussain did not

27  subjectively expect to die after taking such a large overdose of narcotics, it may

28  also determine that her expectations were objectively unreasonable.

1    In support of their Motion, Plaintiffs submit a declaration from Plaintiff

2    Michele Smith Fregoso discussing Ms. Hall-Hussain's interests and her relationship

3    with certain family members.  To the extent that this testimony is designed to show

4    that Ms. Hall-Hussain's death "was purely accidental" as Plaintiffs suggest (Motion

5    at 7:11-12), it is inadmissible because it is speculative and lacks foundation.

6    Plaintiffs also point out that the Deputy Coroner determined that the death

7    was not suicide.  During deposition, the Deputy Coroner testified that his

8    conclusion was based on three factors:  (1) the absence of a suicide note; (2) his

9    conversations with Ms. Hall-Hussain's family; and (3) that the Oxycodone level in

10   Ms. Hall-Hussain's blood, though well within the toxic range, was not higher.

11   (Motion at 5:6-15.)  Each of these factors is questionable.  One, the Deputy Coroner

12   conceded that suicide notes are present in only half of the cases ultimately ruled to

13   be suicide.  (Laska Decl., Exhibit 2 at 65:7-13.)  Two, no one (not even Dr. Chen)

14   informed the Deputy Coroner that Ms. Hall-Hussain had a history of depression.

15   (*Id.* at 47:19-22.)  Three, the Deputy Coroner admitted that he is not a toxicologist

16   and that he had no way of evaluating what the levels of Oxycodone in Ms.

17   Hall-Hussain's blood should have been, given that she had died hours before she

18   was found, that drugs have half-lives, and that the effect of death on blood levels is

19   "debatable" even by toxicologists.  (*Id.* at 65:25-67:5.)  In any event, the Death

20   Certificate is not conclusive as to the cause of Ms. Hall-Hussain's death.  *Heighley*

21   *v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1256 n.12 (C.D. Cal. 2003) ("a

22   death certificate is 'subject to rebuttal and to explanation'"), *quoting Morris v.*

23   *Noguchi*, 141 Cal. App. 3d 520, 523 n.1 (1983).

24   In sum, the evidence submitted by Plaintiffs does not satisfy their difficult

25   summary judgment burden, especially in light of the facts regarding Ms.

26   Hall-Hussain's depression and the number of pills taken.  At most, it creates a

27   triable issue of fact that renders summary judgment inappropriate.

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41310307.3                                9

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**B.**   **Plaintiffs are not entitled to partial summary judgment because Ms. Hall-Hussain's death was the result of medical treatment and is excluded under the Policy.**

Plaintiffs' Motion fails because Ms. Hall-Hussain's death is excluded under the Policy's "medical or surgical treatment" exclusion.  It is undisputed that the Policy excludes death "due to disease, bodily or mental infirmity, or *medical or surgical treatment* of these."  (SAE, Exhibit A at p. 5 (emphasis added).)  It is also undisputed that Ms. Hall-Hussain died from an overdose of Oxycodone, which Dr. Chen prescribed to treat Ms. Hall-Hussain's intractable pain:

> Q.    [W]hat was the reason that you prescribed the oxycodone for Ms. Hall-Hussain?
>
> A.    For intractable pain.
>
> Q.    And you prescribed the OxyContin *to treat the intractable pain*?
>
> A.    *Right*.

(Laska Decl., Exhibit 1 at 24:6-11 (emphasis added).)

It does not appear that California state courts have specifically examined whether a death caused by an overdose of prescription medication falls within the "medical or surgical treatment" exclusion.  But the Ninth Circuit has examined a similar issue under Idaho law and found the death to be excluded.  *Wilson v. Business Men's Assurance Co.*, 181 F.2d 88, 90 (9th Cir. 1950) (holding death by adverse reaction to hospital-administered sedatives to be excluded under accidental death policy's medical treatment exclusion).

Courts in other jurisdictions have uniformly found accidents caused by overdoses of prescription medication to be excluded under medical treatment exclusions.  *Barkerding v. Aetna Life Ins. Co.*, 82 F.2d 358, 359 (5th Cir. 1936) (analogizing injury by excessive heat treatment to overdose: "The excess of heat is like an overdose of a prescribed drug ignorantly taken by a patient, the effect of which is held to be the result of medical treatment under policies such as this one."), *citing New Amsterdam Cas. Co. v. Perryman*, 162 Miss. 864 (1932)

1  (paralysis as a result of overdose of quinine taken in twice the dosage recommended

2  by physician was excluded by accident insurance policy's medical treatment

3  exclusion); *Bayless v. Travelers Ins. Co.*, 2 Fed. Cas. 1077 (E.D.N.Y. 1877), *rev'd*

4  *on other grounds*, 113 U.S. 316 (1885) (insured's death from inadvertent overdose

5  of opium prescribed by physician in proper doses fell within accident insurance

6  policy's medical treatment exclusion). *See also Order of the United Commercial*

7  *Travelers of America v. Shane*, 64 F.2d 55, 59-60 (8th Cir. 1933) ("If the

8  administering of the drug in the case at bar did not constitute medical or surgical

9  treatment, we should be at a loss how to classify such act.").

10      In their Complaint, Plaintiffs allege that this exclusion does not apply

11  because "the use of pain medication was not a treatment of a medical condition but

12  rather an attempt to mask the pain associated therewith."  (Complaint at ¶ 17.)  In

13  their Motion, Plaintiffs have abandoned this allegation and now argue that this

14  exclusion "does not apply because decedent did not die as a result of treatment but

15  rather died as a result of an accidental overdoes [sic] of Oxycodone—a negligent

16  act resulting in death."  (Motion at 10:8-9.)  This proposition, if accepted, would

17  effectively void the exclusion.  Not surprisingly, none of the three cases cited by

18  Plaintiffs supports this proposition.  The first case, *Heighley*, 257 F. Supp. 2d 1241,

19  did not involve a "medical or surgical treatment" exclusion and is not even

20  remotely on point.  The other two cases—*Bornstein v. J.C. Penney Life Ins. Co.*,

21  946 F. Supp. 874 (C.D. Cal. 1996) and *Chale v. Allstate Life Ins. Co.*, 353 F.3d 742

22  (9th Cir. 2003)—do involve a similar exclusion for disease and medical treatment.

23  But those courts were concerned with the "disease" prong (rather than the

24  "treatment" prong) and analyzed whether the insured's disease was sufficient to

25  exclude the insured's death from coverage when the death resulted in part from

26  factors unrelated to the insured's medical history.  Here, in contrast, there is no

27  dispute that the medical treatment—Ms. Hall-Hussain's use of Oxycodone—was

28

1   the cause of her death.[5]

2       Ms. Hall-Hussain's death by Oxycodone intoxication is excluded under the

3   Policy's "medical or surgical treatment" exclusion.  Plaintiffs do not and cannot cite

4   any authority suggesting otherwise.  As a result, Plaintiffs are not entitled to partial

5   summary judgment on their breach of contract claim.

6   **C.    Plaintiffs are not entitled to partial summary judgment because
        Ms. Hall-Hussain's death was caused by taking more Oxycodone**

7   **than prescribed by her physician and is excluded under the Policy.**

8       Plaintiffs' Motion fails on the separate and independent ground that Ms.

9   Hall-Hussain's death is excluded under the Policy's "drug" exclusion.  It is

10  undisputed that the Policy excludes death that "is caused by or results from the

11  Covered Person's taking or using any narcotic, barbiturate or any other drug *unless*

12  *taken or used as prescribed by a Physician*."  (SAE, Exhibit A at p. 5 (emphasis

13  added).)  It is also undisputed that Ms. Hall-Hussain died from an overdose of

14  Oxycodone after taking at least 178 pills in 13 days, while the maximum prescribed

15  dosage during that period was 96 pills.

16      When Ms. Hall-Hussain took twice as many Oxycodone pills as prescribed

17  by Dr. Chen, she did not take the drug "as prescribed by a Physician."  Her death is

18  therefore excluded from coverage under the Policy.

19      In their Motion, Plaintiffs do not dispute these facts.  Nor do Plaintiffs appear

20  to dispute that their claim for benefits is precluded under the Policy's exclusionary

21  language.  Instead, Plaintiffs argue that the exclusionary language should be read

22  out of the Policy and replaced with statutory language that, according to them, is

23  broader and does not preclude their claim.  As set forth below, Plaintiffs' argument

24  fails on every level.

25

26  _____

    [5] There are other reasons why *Bornstein* and *Chale* should not be relied on by this

27  Court.  *Bornstein* was expressly overruled (albeit on other grounds) by the Ninth
    Circuit in *Khatchatrian v. Continental Cas. Co.*, 332 F.3d 1227, 1229 (9th Cir.

28  2003).  And *Chale*, though a Ninth Circuit case, originated in the Oregon District
    Court and applies Oregon law, which differs significantly from California law.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

41310307.3                              12

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

### 1.    The Policy's "drug" exclusion is valid and enforceable.

Plaintiffs argue that the Policy's "drug" exclusion should be replaced by the following language from the California Insurance Code:

> Intoxicants and controlled substances: The insurer shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated or under the influence of any controlled substance *unless administered on the advice of a physician*.

Cal. Ins. Code § 10369.12 (emphasis added).  This language is found in Section 10369 *et seq*.,[6] which provides a list of "optional" policy provisions that insurers may include in group disability policies.  Section 10369.1 provides:

> Except as provided in Section 10323, no disability policy delivered or issued for delivery to any person in this State shall contain provisions respecting the matters set forth in Sections 10369.2 to 10369.12, inclusive, unless such provisions are in the words in which the same appear in such sections; *provided, however*, that the insurer may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the commissioner, which is not less favorable in any respect to the insured or the beneficiary.

Cal. Ins. Code § 10369.1 (emphasis added).[7]

According to Plaintiffs, the Policy language "unless taken or used as prescribed by a Physician" is less favorable to them than the statutory language "unless administered on the advice of a physician," so the Policy language must be replaced by the statutory language.  And, according to Plaintiffs, the allegedly more favorable statutory language does not exclude Ms. Hall-Hussain's death from coverage.

Plaintiffs' allegations fail because the Insurance Code provisions they rely on apply only to group disability policies, not to individual accidental death policies like this Policy.  Even if those provisions were applicable to this Policy, the language in the Policy is valid and enforceable because it has been approved by the

---

[6] All references are to the California Insurance Code unless otherwise specified.

[7] Accidental death insurance is classified as disability insurance in California. Cal. Ins. Code § 106.

1  California Insurance Commissioner.  And even if the provisions cited by Plaintiffs

2  did apply and the Policy was rewritten as Plaintiffs suggest, Ms. Hall-Hussain's

3  death would still be excluded from coverage because her excessive use of

4  Oxycodone was contrary to her physician's advice.

5          a.      Section 10369 applies only to group disability policies
                   and not to individual accidental death policies like the one
6                  in this case.

7          Section 10369.1 *et seq.* is found in Article 5 of Chapter 4 of the Insurance

8  Code.  Section 10270 (titled "Scope of Chapter") specifies the types of insurance

9  subject to the provisions of Chapter 4.  It includes "selected group disability

10  insurance" as well as certain enumerated categories of insurance covering more

11  than one person (such as, for example, "blanket insurance" and "tuition refund

12  insurance").

13          But *individual* disability policies—including individual accidental death

14  policies like the one in this case—are *not* subject to the provisions of Chapter 4.

15  Cal. Ins. Code § 10270; *accord*, Croskey, et al., *California Practice Guide:*

16  *Insurance Litigation*, § 6:479 (Rutter 2008) ("*Compare—group policies*:  Special

17  doctrines apply to accidental death benefits payable under group insurance

18  policies"; and then citing to Section 10270 and Section 10369.1 as examples).

19          The Policy issued to Ms. Hall-Hussain was an individual accidental death

20  policy.  (SAE, Exhibit A; Penner Decl. at ¶ 5.)  It is not a group disability policy.

21  Therefore, it is not subject to the provisions of Chapter 4 of the Insurance Code,

22  including Section 10369.12.

23          b.      The policy form in this case was approved by the
                   California Insurance Commissioner.
24

25          Even if Chapter 4 of the Insurance Code were construed to apply to

26  individual accidental death policies, the language of Section 10369.12 still would

27  not be read into the Policy because the Policy's language—including the "drug"

28  exclusion—was approved by the California Insurance Commissioner.  The Policy

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                    14

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    issued to Ms. Hall-Hussain is form D454R, which was specifically approved by the

2    Commissioner on May 30, 2001.  (Penner Decl. at ¶¶ 3-5 and Exhibit 2; *see also*

3    SAE, Exhibit A.)

4         Section 10369.1 provides that "the insurer may, at its option, use in lieu of

5    any such provision a corresponding provision of different wording approved by the

6    commissioner, which is not less favorable in any respect to the insured or the

7    beneficiary."  The Policy's "drug" exclusion applies because it was approved by the

8    Commissioner and (as discussed below in Section (c)) is not less favorable than the

9    language in Section 10369.12.

10        Plaintiffs contend that the language in Section 10369.12 is more favorable

11   than the Policy's "drug" exclusion.  But the Policy language will nevertheless stand

12   under a separate provision of the Insurance Code.  Section 10369.1 expressly

13   applies only "[e]xcept as provided in Section 10323 . . . ."  Cal. Ins. Code

14   § 10369.1.  Section 10323, in turn, provides that "with the approval of the insurance

15   commissioner," any statutory language in Article 4 (including Section 10369.1 *et*

16   *seq*.) may be modified if it is "inconsistent with the coverage provided by a

17   particular form or policy."  Cal. Ins. Code § 10323.  To the extent that the "on the

18   advice of a physician" language in Section 10369.12 may be construed in the

19   manner Plaintiffs suggest—that is, to cover a death caused by an overdose of

20   prescription narcotics *intentionally* taken contrary to a physician's advice—it is

21   inconsistent with the accidental death coverage provided under the Policy.

                c.    The Policy language is not "less favorable" to Plaintiffs
22                    than the optional statutory language on these facts.

23

24        Plaintiffs' Complaint largely rests on their allegations that the Policy

25   language "unless taken or used as prescribed by a Physician" is less favorable than

26   the statutory language "unless administered on the advice of a physician," and that

27   Ms. Hall-Hussain's death should be covered under the latter provision.  No

28   California court appears to have addressed this issue.  But the Sixth Circuit recently

41310307.3                                      15

did, and it interpreted the "on the advice of a physician" language to *exclude* deaths

caused by an overdose of prescription medication. *Dice v. General Electric Capital*

*Assurance Co.*, 93 Fed. Appx. 68 (6th Cir. 2004) (not officially published).

In *Dice*, the insured's doctor prescribed a maximum of six 40mg Oxycodone

tablets, or a total of 240 milligrams, every 24 hours. The insured's postmortem

toxicology report showed that the insured had the equivalent of 300mg of

Oxycodone in her blood, more than the prescribed dosage. Her life insurance

policy excluded death caused by taking drugs "unless administered on the advice of

a physician." *Id.* at 69. The Sixth Circuit affirmed the District Court's entry of

summary judgment for the insurer and ruled that the insured's death was caused by

ingesting more Oxycodone than her physician had prescribed and was excluded

under the policy:

> Brenda ingested more Oxycontin than her physician had
> prescribed or advised that she ingest and such ingestion,
> either alone or in combination with some of the other
> drugs found in her blood, caused her death. Under these
> circumstances, Oxycontin was not administered on the
> advice of Brenda's physician. Because Brenda's death
> resulted from her being under the influence of at least one
> drug that was not administered on the advice of a
> physician, the policy exclusion is applicable . . . .

*Id.* at 70 (emphasis added).

### d. *Hummel* does not help Plaintiffs.

Plaintiffs pin their hopes on *Hummel v. Continental Casualty Insurance*

*Company*, 254 F. Supp. 2d 1183, 1189 (D. Nev. 2003) (holding that a similar—but

not identical—policy exclusion for drugs "administered on the advice of a

physician" was more favorable to the insured than an exclusion for drugs taken "as

prescribed by a physician" and did not exclude death caused by an overdose of

prescription Oxycodone). At first blush, *Hummel* appears to be on point. But a

closer reading of the case reveals that Plaintiffs' hopes are misplaced. *Hummel* is

not binding, is distinguishable, and is poorly reasoned.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                    16

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

                            (1)    *Hummel* is not binding.

2       *Hummel* is a Nevada District Court case interpreting the Nevada Insurance

3  Code.  It is not binding on this Court.  And it should not be considered persuasive

4  authority because it does not involve California law or the provisions of the

5  California Insurance Code at issue in this case.  In fact, the *Hummel* court expressly

6  based its decision on its perception of the intent of the Nevada Legislature and on

7  Nevada laws of statutory construction, *id*. at 1188-90, neither of which guides this

8  Court.[8]

9                          (2)    *Hummel* is distinguishable.

10      *Hummel* is distinguishable on two crucial grounds.

11      First, like Chapter 4 of the California Insurance Code, the provisions of the

12 Nevada Insurance Code at issue in *Hummel* apply only to certain types of insurance

13 policies.  In Nevada, however, the distinction is not between individual and group

14 disability policies (as in this case) but between group and franchise policies.  In

15 *Hummel*, the court agreed with the plaintiff that the policy in question was a

16 franchise policy and that the statutes in question applied.  Here, in contrast,

17 Sections 10369.1 and 10369.12 do not apply to Ms. Hall-Hussain's individual

18 accidental death Policy because they are found in Chapter 4 of the Insurance Code,

19 which expressly applies only to certain types of group disability policies.

20      Second, like the statutory "drug" exclusion in Section 10369.12, the statutory

21 exclusion at issue in *Hummel* could be replaced by the insurer with "a

22 corresponding provision of different wording approved by the commissioner which

23 is not less favorable in any respect to the insured or the beneficiary."  *Id*. at 1188,

24 quoting Nev. Rev. Stat. § 689A.180.  In *Hummel*, however, the court noted that the

25 parties had not submitted any evidence regarding whether the policy had been

26 approved by the Nevada Insurance Commissioner.  *Id*. at 1188 n.2.  But here, the

27

28  _____

[8] Plaintiffs provide only a partial citation to *Hummel* that is misleading and neglects
to inform the Court that *Hummel* is a Nevada case.  (Motion at 9:14-15.)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                17

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1   California Insurance Commissioner approved the Policy's drug exclusion on May

2   30, 2001.

3                    (3)    _Hummel_ is poorly reasoned.

4        The _Hummel_ decision is poorly reasoned.  The _Hummel_ court began by

5   holding the language "administered on the advice of a physician" to be ambiguous.

6   But in _Dice_, the Sixth Circuit had no trouble interpreting the plain language of such

7   an exclusion and finding that it excluded a death where the insured took more

8   medication than her doctor had advised.  _Dice_, 93 Fed. Appx. at 70.

9        Having determined (wrongly) that the language "administered on the advice

10  of" was ambiguous, the _Hummel_ court then attempted to divine the legislature's

11  intent and found that the plaintiff's narrower interpretation of the language was

12  "more in line with the policy behind the statute, namely, protecting insureds."  254

13  F. Supp. 2d at 1190.  But the court continued:

14           Nor does [the plaintiff's interpretation] achieve the absurd
             results that Continental asserts, specifically, that Nevada's
15           insurance law would allow an insured to take unlimited
             quantities of prescribed medications and still be afforded
16           coverage under the policy as insurance companies are not
             without means to protect themselves from risks arising
17           from intentional overdoses. Moreover, contrary to
             Continental's position, it is the clause "taken as
18           prescribed by" that could very well lead to absurd results.
             For instance, if Erica had taken three Oxycodone pills in
19           one day as opposed to two, and suffered some unforseen
             [sic] negative reaction resulting from the additional
20           medication, which in turn resulted in injury or loss,
             Continental would be free to deny her coverage based on
21           her failure to adhere strictly to her physicians instructions.

22  _Id_.  This passage exposes the court's flawed reasoning.

23       The court insisted that its holding would not "achieve the absurd result[] . . .

24  that Nevada's insurance law would allow an insured to take unlimited quantities of

25  prescribed medications and still be afforded coverage under the policy."  _Id_.  Yet

26  that is exactly what the decision did.  In _Hummel_, it was undisputed that the insured

27  had intentionally taken far more Oxycodone than had been prescribed by her

28  physician, yet the court determined that her death was covered despite the statutory

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                        18

1    exclusion.

2            The court also justified its holding on the ground that "insurance companies

3    are not without means to protect themselves from risks arising from intentional

4    overdoses." That is true, but insurance companies protect themselves against such

5    risks *by inserting exclusions in their policies*. That is exactly what the insurer in

6    *Hummel* had tried to do, but the court wrote the exclusion out of the policy. If the

7    *Hummel* court was thinking of other ways in which insurers could exclude losses

8    other than through policy exclusions, it did not identify them.

9            The court then suggested that it was the insurer's proposed construction—

10   that is, that the "administered on the advice of" language should exclude deaths

11   when insureds do not "adhere strictly" to their doctors' instructions—that "could

12   very well lead to absurd results." *Id*. But Oxycodone is a narcotic painkiller that

13   comes with significant risks. As is apparent from the number of cases involving

14   deaths caused by overdoses of Oxycodone, it is a dangerous drug if not taken

15   exactly as prescribed. Insurers are entitled to protect themselves against such risks.

16           The *Hummel* court was preoccupied with a hypothetical in which the insured

17   might take one extra pill, but this case presents a very different (and very real)

18   scenario. Here, Dr. Chen discussed with Ms. Hall-Hussain the risks of taking

19   Oxycodone and the importance of not exceeding the prescribed dosage. Yet Ms.

20   Hall-Hussain chose to ignore Dr. Chen's instructions and take over 80 extra pills at

21   the cost of her life. Stonebridge did not accept such a risk and is entitled to exclude

22   it from coverage.

23           Finally, the *Hummel* court concluded by stating: "It is more reasonable to

24   assume that the purpose of the statute's language was to prevent the exclusion from

25   applying in cases where the consumption of the drug or narcotic was itself an illegal

26   act." Even if the court had been entitled to base its statutory interpretation on what

27   it merely *assumed* the legislature to have meant, there is no basis for the court's

28   assumption. The Nevada Legislature, like the California Legislature, knows how to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                      19

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1    draft statutes involving illegal conduct.  If either had intended to permit insurers to

2    exclude only those deaths caused by using illegal drugs, it could have easily drafted

3    the statute as such.  Instead, both legislatures permitted insurers to exclude deaths

4    occurring when insureds do not use medication "on the advice of a physician."

5         In sum, this Court should not be guided by *Hummel* in this case.

6              e.    *Legare* does not help Plaintiffs either.

7         Plaintiffs also ask this Court to rely on the unpublished "Findings of Fact and

8    Conclusions of Law" from a case their attorneys litigated years ago in the Southern

9    District of California:  *Legare v. Canada Life Assurance Co*.  But *Legare* is

10   distinguishable on several grounds.

11        First, unlike this case, *Legare* involved a group disability policy (which is

12   subject to Chapter 4 of the California Insurance Code) and does not appear to have

13   involved policy language that was expressly approved by the California Insurance

14   Commissioner.  Second, contrary to Plaintiffs' suggestion, *Legare* does not address

15   "the exact same issue" as this case.  (Motion at 9:25.)  The *Legare* court considered

16   an exclusion for loss occurring "while: (1) in the course of operating a motor

17   vehicle; (a) under the influence of an intoxicant."  (Declaration of John Stennett,

18   Exhibit 3, at ¶ 11.)  This is far broader than the "as prescribed by a physician"

19   language in Ms. Hall-Hussain's Policy and, unlike the Policy, is plainly less

20   favorable to the insured.  Third, in *Legare*, the insured died in a car accident with

21   Soma and Tylenol with Codeine in his system.  The court appears to have

22   considered only whether the insured had a prescription for those drugs and not

23   whether the insured had used more than had been prescribed.

24        In any event, the Court should not consider the *Legare* order because

25   Plaintiffs failed to request that the Court to take judicial notice of it as required by

26   Federal Rule of Evidence 201.  Instead, Plaintiffs merely attach the order to their

27   attorney's declaration.  Because the order is being offered to prove the truth of its

28   contents, it is inadmissible hearsay.  Fed. R. Evid. 801-02.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                   20

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

2. **Ms. Hall-Hussain's death is excluded because her Oxycodone overdose was not "on the advice of a physician."**

Even if this Court were to find that the Policy language "unless taken or used as prescribed by a Physician" should be replaced by the statutory language "unless administered on the advice of a physician," Plaintiffs' claim still fails. When Ms. Hall-Hussain chose to take over 80 more Oxycodone pills than Dr. Chen had prescribed, she did not take them "on the advice of" Dr. Chen. Indeed, she took them contrary to Dr. Chen's express instructions.

**D.    Plaintiffs' Motion was untimely.**

On July 21, 2008, this Court approved the parties' proposed briefing schedule and ordered the parties to file their cross-motions by August 13, 2008. Stonebridge complied with the Order, but Plaintiffs did not. On August 14, 2008, Stonebridge's counsel informed Plaintiffs' counsel that Plaintiffs' Motion had not been timely filed. (Laska Decl. at ¶ 4.) Nonetheless, Plaintiffs did not file their Motion until August 15, 2008—two days late. Plaintiffs' Motion should be denied as untimely.

1  **IV.  <u>CONCLUSION</u>**

2       Ms. Hall-Hussain did not take Oxycodone "as prescribed by" or "on the

3  advice of" her physician.  To hold otherwise in this case would render the

4  exclusionary language meaningless.  It would also violate public policy and

5  encourage abuse of prescription medication.  Because Ms. Hall-Hussain's death is

6  excluded under the "medical and surgical treatment" exclusion and the "drug"

7  exclusion (regardless of which language is used), Plaintiffs are not entitled to partial

8  summary judgment on their breach of contract claim.

9

10  Dated:  August 29, 2008                MANATT, PHELPS & PHILLIPS, LLP
                                          MARGARET LEVY
11                                        JOSEPH E. LASKA

12

13                                 By:    /s/ Joseph E. Laska
                                          Joseph E. Laska
14                                        *Attorneys for Defendant*
                                          STONEBRIDGE LIFE INSURANCE
15                                        COMPANY

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

41310307.3                                    22

OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT